UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>DARNELL PEARSON,<br><br>                Defendant. | Case No.  1:19-cr-00013-JLT-SAB-1<br><br>ORDER: (1) DENYING AMENDED § 2255 MOTION AS CLARIFIED, and (2) DENYING AS MOOT MOTION FOR EXPEDITED RULING<br><br>(Docs. 148, 155, 156) |

## I. INTRODUCTION

Darnell Pearson was convicted of two counts of 21 U.S.C. § 841(a)(1), (b)(1)(C), distributing fentanyl resulting in the death of two victims and the near death of two others. He proceeds *pro se* here with: (1) an amended 28 U.S.C. § 2255 motion filed on April 21, 2023 claiming ineffective assistance of counsel ("IAC"), as "clarified" by a motion filed on April 14, 2026 (Docs. 148, 156, respectively), and (2) a motion to expedite ruling (Doc. 155). The government filed supplemental opposition to the amended § 2255 motion on March 3, 2026.[1] (Docs. 129, 149). Pearson replied to the supplemental opposition on April 9, 2026. (Docs. 136, 154).

The Court finds these matters amenable to resolution without a hearing. (E.D. Cal. L.R. 230(g)). As explained below, the Court **DENIES** the amended § 2255 motion as clarified,

---

[1] The supplemental opposition, though untimely due to calendaring error, has been considered by the Court. *See United States v. Chavez*, 2024 WL 1660155, at *1 (E.D. Cal. Apr. 17, 2024) (granting untimely request for extension of time to respond to a § 2255 motion).

1

**DECLINES** to issue of a certificate of appealability, and **DENIES as moot** the motion for expediated ruling.

**II. BACKGROUND**

Pearson was indicted in January of 2019 on charges of distributing fentanyl resulting in the January 7, 2019 death of Fernando Chavez and the near deaths of Adrian Ruiz and Marc Banuelos in Fresno CA (Count One), and the death of Lisa Carter in Madera, CA (Count Two).

During the January 2020 jury trial, the defense and the prosecution stipulated to various matters, including that:

> Victim 1 [Chavez]'s death resulted from the use of fentanyl on January 7, 2019 in Fresno, California:
>
> Victim 2 [Adrian Ruiz] suffered serious bodily injury resulting from the use of fentanyl on January 7, 2019, in Fresno, California, because there was a substantial risk that Victim 2 would have died without the intervention of medical treatment.
>
> Victim 3 [Marc Banuelos] suffered serious bodily injury resulting from the use of fentanyl on January 7, 2019, in Fresno, California, because there was a substantial risk that Victim 3 would have died without the intervention of medical treatment.
>
> Victim 4 [Lisa Carter]'s death resulted from the use of fentanyl on or about January 7, 2019, in Madera, California.
>
> Shana Irby, Forensic Chemist with the Drug Enforcement Administration, tested the white powder seized from 301 South B Street, Madera, California, Apartment 22, and found that the substance contained pure fentanyl. The results of the test were accurate and may be admitted into evidence without further foundation or authentication.
>
> Historical cell-site information provided by T-Mobile represents business records of T-Mobile and may be admitted into evidence without further foundation or authentication. These records show that on January 7, 2019, Darnell Pearson's cellular phone was in the area of 930 N. Van Ness Avenue, Fresno from 5:09 p.m. and 5:53 p.m. Between 6:53 p.m. and 7:34 p.m., Darnell Pearson's cellular phone was in the area of 301 South B Street, Madera. Between 8:17 p.m. and 8:25 p.m. Darnell Pearson's cellular phone was in the area of 930 N. Van Ness Avenue, Fresno. Between 8:39 p.m. and 8:51 p.m., Darnell Pearson's cellular phone was in the area of 301 South B Street, Madera.
>
> Historical cell-site information provided by AT&T represents business records of AT&T and may be admitted into evidence without further foundation or authentication. These records show that on January 7, 2019, [Lisa Carter's] cellular phone was in the area of 301 South B Street, Madera between 5:00 p.m. and 8:51 p.m.

(Doc. 62 at 1-3).

Pearson's defense centered on his testimony that he was not the source of the white powder

consumed by the victims that result in their death and injury. (*See* Doc. 108 at 169, 180-205; Doc. 129-3 at 2-3). The jury found Pearson guilty on both Counts. (Doc. 73). The Court sentenced Pearson to 360 months imprisonment and 36 months of supervised release, entering judgment in July, 2020.[2] (Doc. 90).

Pearson appealed, asserting errors in admitting evidence, instructing the jury, and ordering restitution. *United States, v. Pearson,* 2020 WL 7693719, at *4-5 (CA. 9) (Appellate Brief). On March 16, 2022, the Ninth Circuit Court of Appeals affirmed the conviction and sentence. (Doc.119). Pearson's petition for writ of certiorari was denied by the United States Supreme Court on October 3, 2022. *Pearson v. United States*, 143 S. Ct. 180.

On April 21, 2023, Pearson filed *pro se* a 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence asserting Fourth and Sixth Amendment violations based on defense counsel Barbara Hope O'Neill's IAC. (Doc. 121). Pearson argued therein that counsel was ineffective by stipulating the victims' death and injury resulted from the use of fentanyl even though victim Carter had drugs other than fentanyl in her system and her cause of death was unknown, and by failing adequately to explain the stipulation to him, resulting in structural error. (*Id.*; *see also* Doc. 62 at 1-2).

On January 14, 2026, Pearson filed an amended § 2255 motion repeating these IAC allegations and additionally alleging that counsel's IAC denied him defenses under *Burrage v. United States*, 571 U.S. 204 (2014), and of actual innocence.[3] (Doc. 148).[4]

**III. STANDARD OF REVIEW**

"A federal prisoner challenging the legality of detention generally must do so by a motion pursuant to 28 U.S.C. § 2255." *Scaggs v. Ciolli*, 2023 WL 1879461, at *1 (9th Cir. February 10, 2023) (citing *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006)). Under § 2255, a prisoner in

---

[2] Pearson is incarcerated at FCI Victorville Medium II, Victorville, CA, with an anticipated release date of September 27, 2044. Federal Bureau of Prisons Inmate Locator (http://www.bop.gov/inmateloc/) last visited June 15, 2026.

[3] To the extent Pearson may claim structural error, the Court finds he does so in the context of IAC and applies the standard set out in *Strickland v. Washington,* 466 U.S. 668 (1984). See *United States v. Shults,* 2024 WL 35977, at *8 (E.D. Cal. Jan. 3, 2024) (citing *Weaver v. Massachusetts*, 582 U.S. 286, 298-301, 137 S. Ct. 1899, 1910-11 (2017)) ("*Strickland* is the standard under which courts are to consider [structural error] claims."

[4] The amended § 2255 motion was timely filed. (See Doc. 147 at 3); see also 28 U.S.C. § 2255(f); Fed. R. App. P. 4(b)(1). The government does not contend otherwise. (See Doc. 149).

3

federal custody under sentence imposed by a federal court, may collaterally attack the validity of his conviction or sentence by filing a motion to vacate, set aside or correct the sentence in the court that imposed the sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). Section 2255 also enumerates the grounds upon which a sentencing court may grant the federal prisoner relief: "[u]pon the ground that [1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] . . . the court was without jurisdiction to impose such sentence, or [3] . . . the sentence was in excess of the maximum authorized by law, or [4] [the sentence] . . . is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see also United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023), *abrogated on other grounds by Fernandez v. United States*, No. 24-556, 2026 WL 1485476, at *7 (U.S. May 28, 2026) (quoting *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999)) ("Section 2255 grants a prisoner in custody the right at any time to bring a motion to vacate, set aside or correct the sentence upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law. . . .").

A successful § 2255 motion requires the federal prisoner, movant, to demonstrate the existence of an error of constitutional magnitude that "had a substantial and injurious effect or influence on the guilty plea or [ ] jury's verdict" and show the error resulted in actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Section 2255 relief is only warranted where a movant shows the asserted "fundamental defect . . . inherently result[ed] in a complete miscarriage of justice." *United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008); *United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

"Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not support relief); *Neighbors v. United States*, 457 F.2d 795, 795 (9th Cir. 1972) (affirming denial of § 2255 motion where the allegations regarding ineffective assistance of counsel were entirely

4

conclusory and without support in the record).

## IV. DISCUSSION

Pearson asserts that attorney O'Neill was ineffective by: (1) stipulating that the death of victim Carter resulted from the use of fentanyl, denying him a defense under *Burrage* and to actual innocence, (Doc. 148), and (2) failing to challenge the indictment prior to trial and/or seek acquittal during trial on grounds the death of Carter did not result from the use of fentanyl.[5] (Doc. 156).

### A.   IAC – Legal Standards

Ineffective assistance of counsel claims may be heard on collateral review, even if a defendant could have, but failed to, bring those claims on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504-05, 509 (2003); *see also United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993); *United States v. Ratigan*, 351 F.3d 957, 964-65 (9th Cir. 2003). To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The law governing ineffective assistance of counsel claims is clearly established. *Canales v. Roe*, 151 F.3d 1226, 1229 (9th Cir. 1998). In *Strickland*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. at 687.

First, "deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland*, 466 U.S. at 688). The defendant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances. *See Strickland*, 466 U.S. at 690; *see also United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). There is a strong presumption that counsel's performance fell within the "wide range of professional assistance."

---

[5] The Court, for present purposes and given Pearson's *pro se* status, assumes without deciding that claims asserted in the purported clarifying motion (Doc. 156) could relate back to the amended § 2255 motion. See Fed. R. Civ. P. 15(c)(1)(B); *Ioane v. United States*, 2015 WL 1249791, at *1 (E.D. Cal. Mar. 18, 2015) (citing *Mayle v. Felix,* 545 U.S. 644, 664 (2005) ("[p]roposed amendments may be considered timely under Federal Rule of Civil Procedure 15(c) after the one-year statute of limitations has run if the amendments relate back to the original claims [ ] so long as the original and amended petitions state claims that are tied to a common core of operative facts. . . .").

*Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689; *Quintero-Barraza*, 78 F.3d at 1349; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, to demonstrate prejudice, the movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' " *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *United States v. Leonti*, 326 F.3d 1111, 1120 (9th Cir. 2003) (same).

### B.    IAC - Fentanyl Causation Stipulation

Pearson alleges the stipulation was not a reasonable trial strategy. He argues the stipulation was the result of an inadequate investigation into the cause of victims' death and injury. He points to victim Carter's autopsy and toxicology report which in his view shows fentanyl was not an "independent" or "but for" cause of death for purposes of 21 U.S.C. § 841(a)(1), (b)(1)(C), and argues his actual innocence. (*See* Doc. 148 at 1-5; *see also* Doc. 156 at 1); *Burrage*, 571 U.S. at 218-19 ("[A]t least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.").[6] Carter's autopsy report states the cause of death as:

"[A]cute combined fentanyl and cocaine toxicity. (UNKNOWN)"

(Doc. 129-2 at 3). Carter's post-mortem toxicology showed:

[A] "therapeutic blood level of fentanyl + metabolite; negative for ethanol, cocaine and other illicit drugs."

(*Id*). The Court finds that Pearson has not pointed to facts overcoming the presumption that counsel acted competently in relation to the fentanyl causation stipulation.

---

[6] The jury was instructed that use of fentanyl resulting in death meant "fentanyl was the cause in fact [i.e. but for]" cause of death. (Doc. 113 at 30).

### 1.    The Defense Investigation was Reasonable

Pearson has not shown that counsel's investigation and development of the trial defense was unreasonable given the record in its entirety. *See Washington v. Shinn*, 46 F.4th 915, 927 (9th Cir. 2022) (citing *Strickland*, 466 U.S. at 690) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . ."); *Young v. Gipson*, 163 F. Supp. 3d 647, 689 (N.D. Cal. 2015) (petitioner's own conclusory statements fail to provide a factual showing that his trial counsel in fact failed to investigate the purported exculpatory information). For example, Pearson offers nothing more that conclusions and unsupported inference that counsel unreasonably acquiesced in the prosecution's theory of fentanyl causation.

On the other hand, counsel's habeas declaration supports her competent conduct. Counsel avers that prior to trial; she and her investigator reviewed the discovery including witness statements, visited the crime scenes and interviewed witnesses, and conducted multiple interviews with Pearson who denied providing the drugs which led to the victims' death and injury and suggested instead that one of the victims was the source. (Doc. 129-3 at 2-3). Counsel reviewed Pearson's text messages. (*Id*. at 3). Counsel prepared for trial including motions, exhibits, and jury instructions. (*Id*.). Counsel discussed with Pearson the defense to be presented, and the cause of death of the victims. (*Id*. at 3). Counsel discussed the fentanyl causation stipulation with Pearson, and that "[w]e both felt that a stipulation would streamline the defense and we could then concentrate on the defense that [Pearson] did not provide the drugs[.]" (*Id.* at 4). Counsel also observes that Pearson's trial testimony echoed his consistent statements to her that he did not provide drugs including cocaine and/or "China white" to the victims.[7] (Doc. 129-3 at 4; Doc. 79 at 15, 23, 33-34; Doc. 108 at 162, 169, 180, 184; *see also* Doc. 18 at 169, 180-206); *United States v. Smith*, 282 F.3d 758, 763 (9th Cir. 2002) ("[L]itigation tactics are decisions generally left to defense counsel.").

The Court finds that Pearson's averment on habeas denying that he knowingly and voluntarily agreed to the fentanyl causation stipulation is vague and conclusory and specifically refuted by counsel's habeas declaration and inference raised in the factual record in its entirety. (*See* sections IV

---

[7] As discussed below, "China white" refers to an opioid, heroin. (See section IV B 3 a, post, citing Doc. 108 at 63-64).

B 2, 3, post).

### 2.      Fentanyl Causation Stipulation was Reasonable

Pearson has not overcome the presumption that counsel was motivated by reasonable trial tactics in relation to the fentanyl causation stipulation. The Court observes the evidence that Carter's death resulted from fentanyl; the prosecution's disclosure of a toxicology expert; the  potentiality of graphic and inflammatory causation evidence; and the post-stipulation presentation of Pearson's personally proffered defense that he did not supply the victims with the white power that caused them harm. (*See* section IV B 2, 3,ante/post; Docs. 129-1, 129-2, 129-3, 129-4); *see also Dyer v. Calderon*, 122 F.3d 720, 737 (9th Cir. 1997) *vacated on reh'g en banc on other grounds*, 151 F.3d 970 (1998) (holding that if counsel had not stipulated to prior conviction, the prosecution could have elicited "potentially damaging testimony," and therefore, defense counsel's stipulation was reasonable); *see also Stankewitz v. Wong*, 698 F.3d 1163, 1172 (9th Cir. 2012) ("[H]abeas courts must give substantial weight to the constitutionally protected independence of counsel and the wide latitude counsel must have in making tactical decisions.").

For example, competent counsel could conclude the autopsy report viewed in context of the record as a whole showed that Carter's death resulted from the combined synergistic effect of fentanyl and cocaine toxicity, and not cocaine independently. Even if  the autopsy report might be seen to qualify such  toxicity as "unknown[,]" the Court finds Pearson has not shown counsel acted unreasonably on that basis.

The conclusion Pearson draws from his review of Carter's autopsy and toxicology report, that Carter "had a toxic level of cocaine in her system that would have caused her death, irregardless of the fentanyl[,]" is merely his supposition. (Doc. 148 at 2; *see also* Doc. 154 at 1-3); *United States v. Klipp*, 2020 WL 5412072, at *5 (E.D. Cal. Sept. 9, 2020), *report and recommendation adopted*, 2022 WL 717968 (E.D. Cal. Mar. 10, 2022) (movant's own factual analysis resulting in the conclusion that he is ineligible for conviction not a basis to find IAC where counsel reasonably reviewed the government's evidence to assess whether it could meet its burden). Similarly, Pearson's conclusion that "[t]his is not a case in which Ms. Carter had a nonlethal amount of cocaine in her system[,]" is unsupported in the record. (*See* Doc. 148 at 4; *see also* Doc. 154 at 1-3). Pearson's reliance upon the

opinion in *Rossum v. Patrick*, a case in which the defendant challenged her state murder conviction on grounds of insufficient evidence of fentanyl causation, is not reason to find otherwise. That opinion was withdrawn and superseded by an opinion affirming denial of the defendant's habeas petition. (*See* Docs. 154, 156 citing *Rossum*, 622 F.3d 1262 (9th Cir. 2010), *opinion withdrawn and superseded on reh'g*, 659 F.3d 722 (9th Cir. 2011)).

Furthermore, the record in this case otherwise supports presumed counsel competence. It is uncontested that the Count One (Fresno) victims suffered fentanyl overdose nearly contemporaneously with the overdose of Carter, the Count Two (Madera) victim. (*See* section IV B 3, post; *see also* Doc. 129-1). Signs of fentanyl overdose were observed on Carter's body. (*See* section IV B 3, post; *see also* Doc. 129-2). Pearson was linked, including chronologically and geographically to all the victims and the crimes. (*Id.*). As noted, the prosecution had disclosed a toxicology expert. (*See* Doc. 129 at 11 n.7 and Ex. 4).

Though Pearson avers that "Ms. O'Neil never asked [him] to agree to the stipulation, nor informed [him] that he could assert he did not agree to not presenting the autopsy findings to the jury or court[,]" (*see* Doc. 148 at 6), this vague, circular, and conclusory statement is directly refuted by counsel's declaration. (Doc. 129-3). Counsel avers that prior to trial: she discussed the causation stipulation with Pearson and that "[w]e both felt that a stipulation would streamline the defense and we could then concentrate on the defense that [Pearson] did not provide the drugs[,]" (*id*. at 4), the defense to which he testified (*id*.). Counsel avers that twelve days after this initial discussion, she again met with Pearson who agreed to the causation stipulation.  (Doc. 129-3 at 4-5; Doc. 62).

Additionally, Pearson's conduct corroborates counsel's averments in relation to the fentanyl causation stipulation. Pearson does not dispute that he discussed the stipulation with counsel on multiple occasions. (Doc. 129-3 at 4; *see also* Doc. 148 at 6). Pearson was present in Court when the stipulation was entered on the record, and then later when the Court instructed the jury on the stipulation, and at no time did Pearson question the stipulation or seek to discuss it with counsel or object to it. (Doc. 107 at 2, 5, 240-45; Doc. 108 at 211); *see Amaya v. Frauenheim*, 2017 WL 3981120, at \*12 (C.D. Cal. June 20, 2017), *report and recommendation adopted*, 2017 WL 3981193 (C.D. Cal. Aug. 31, 2017) ("Petitioner offers no arguments that the stipulation was involuntary, and

nothing in the record supports his claim. Petitioner was present in court when trial counsel entered into the stipulation; and the stipulation was entered into after a lengthy discussion with the court indicating that defense counsel made a well-informed choice based on strategic trial considerations[.]").

Therefore, upon consideration of the case then before her, and as a matter of trial tactics agreed to by Pearson at the time, counsel reasonably could decide to stipulate to fentanyl causation in order then to present a defense centered on Pearson's unwavering contention that he did not supply the victims with the white powder that harmed them. *See Mendez v. Swarthout*, 2018 WL 2077278, at *2 (9th Cir. May 4, 2018) ("An ineffective assistance of counsel claim will fail if the conduct can be readily explained as reasonable trial strategy."); *see also Lemon v. United States,* 335 F.3d 1095, 1096 (8th Cir. 2003) (defense counsel's decision to stipulate that controlled substance found in apartment with defendant was crack cocaine was not ineffective assistance; counsel's decision was part of reasonable trial strategy in which counsel sought to disprove element of possession rather than drug type, and stipulation did not prejudice defendant). Importantly, counsel reasonably could find this strategy of stipulating to fentanyl causation not only furthered Pearson's personally proffered defense, but also his desire to avoid delaying trial proceedings. (*See* Doc. 129-3 at 2-5).

### 3.    The Fentanyl Causation Stipulation was not Prejudicial

Pearson has not demonstrated on the factual record that absent the fentanyl causation stipulation, there was a reasonable probability potential defenses under *Burrage* and of actual innocence would have resulted in a more favorable outcome.  Pearson argues that "[t]here were facts in this case that would have caused both the court and jury to find that [he] was actually innocent, based on *Burrage*[.]" (Doc. 148 at 2). But as discussed below, Pearson points only to his conclusory views and conjecture that the prosecution could not prove beyond a reasonable doubt fentanyl use resulted in the Count Two death of Carter, and that absent Count Two, Count One could not be proven beyond a reasonable doubt. (*See* Doc. 148 at 3-5).

### a.    *Burrage Defense*

Pearson has not shown the prosecution lacked evidence sufficient under *Burrage* that Carter would have lived but for her fentanyl use. *See Burrage*, 571 U.S. at 219; (*see also* Doc. 129 at 11 n.7 and Ex. 4 thereto regarding the government's noted disclosure of a toxicologist as a potential expert

at trial). In addition to the autopsy and toxicology evidence discussed above, the noted record reflects that fentanyl toxicity resulted in the nearly contemporaneous death and injuries to the Count One (Fresno) victims. (*See* Doc. 148; Doc. 129-1 at 1-3, [7-25], Doc. 129-2 at 1). Around the time the Fresno victims were overdosing, Pearson was outside Carter's apartment in nearby Madera, asking her what she thought of something that tasted like "Norco" and opioid. (*See* Doc. 108 at 95).

The parties stipulated that pure fentanyl was found at Carter's crime scene. (*See* Doc. 62 at 2). Also, responding Madera Police Officer Eichmann testified that when he encountered Carter on the bathroom floor, she had "a white foamy subject around her mouth and inside her mouth." (Doc. 107 at 200). Detective Cardinale, who qualified at trial as an expert in narcotic transactions and investigations (Doc. 108 at 55),  testified that:

> [F]rom what I understand, once you ingest the fentanyl, it goes into your nasal cavity, reaches your brain stem. The brain stem reacts to your lungs, shuts down your lungs, and that's what causes the fluid to come out of the mouth and nose, and that's why a lot of times when you see fentanyl overdoses, you will see like a white-reddish foam-type material around the face and nose area.

(Doc. 108 at 60); *see also United States v. Gutierrez*, 2025 WL 506694, at *5 (C.D. Cal. Feb. 11, 2025) (expert testimony that fentanyl toxicity results in pulmonary edema and foaming around the nose and mouth).

A *Burrage* defense otherwise lacked footing in the record. For example, expert witness detective Cardinale testified that "China white" refers to an opioid, heroin. (Doc. 108 at 63-64). Pearson, without provocation, stated to victim Banuelos that victim Carter had died from China white – reasonably raising an inference on the record as a whole that Pearson knew Banuelos and Carter each ingested an opioid, China white, and that he supplied it to them. (Doc. 107 at 138-40; *see also* Doc. 108 at 205). Victim Ruiz also testified that Pearson described the white powdery substance he provided as "China white or white China." (*Id*. at 163). Relatedly and to the extent Carter was found with joint fentanyl and cocaine toxicity, witness Megan Gonzalez testified she had purchased cocaine from Pearson for 3 years before the crime (Doc. 107 at 225) and she and Carter had purchased cocaine from Pearson on many occasions (Doc. 107 at 232).

Therefore, competent counsel reasonably could have decided not to contest causation under *Burrage,* and instead focus on the defense that Pearson himself  embraced, that he did not provide the

victims with the white powder in issue in the case. *See United States v. King*, 2012 WL 2912139, at *4 (E.D. Cal. July 16, 2012), *report and recommendation adopted,* 2012 WL 3647044 (E.D. Cal. Aug. 22, 2012) ("post-hoc complaints about the strategy or tactics employed by defense counsel are typically found insufficient to satisfy the first prong of *Strickland*. 466 U.S. at 690; *see also People of Territory of Guam v. Santos,* 741 F.2d 1167, 1169 (9th Cir. 1984) ("A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel."); *United States v. Simmons,* 923 F.2d 934, 956 (2d Cir. 1991) (appellant's displeasure with strategy employed by trial counsel insufficient to establish ineffectiveness).").

### b.    *Actual Innocence Defense*

Petitioner has not shown that absent the fentanyl causation stipulation, competent counsel could have presented a viable actual innocence defense. "[T]o establish actual innocence, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Saelua v. Ciolli*, 2020 WL 5548317, at *3 (E.D. Cal. Sept. 16, 2020), *report and recommendation adopted*, 2021 WL 4686552 (E.D. Cal. Oct. 7, 2021) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Actual innocence means factual innocence, not mere legal insufficiency. *Id*.

Pearson avers here that "[he] claimed he was completely innocent of the charges[.]" (Doc. 148 at 6). Yet the Ninth Circuit in affirming his conviction and sentence observed the "overwhelmingly incriminating" evidence against Pearson including "cellphone location data and consciousness of guilt evidence[.]" *Pearson*, 2022 WL 807411, at *1; *see also United States v. Carpenter*, 923 F.3d 1172, 1183 (9th Cir. 2019)") ("Considering the mountain of evidence against Velazquez, we conclude that the references to his methamphetamine use at Hall's house, while prejudicial, were harmless.").

The prosecution's case included witness testimony, cell phone GPS location data and texts/deleted texts - all supporting Pearson's Count One and Count Two violations. (Doc. 5 at 5-8, Doc. 15 at 10-12; Doc. 108 at 42-43, 116-43, 169-206*); see also* Doc. 97 at 7-8, 28). This evidence included Carter's texts to Pearson just before her death. For example, Carter responded to Pearson's text asking "is it cool," by stating "it's ok . . . taste like Norco.") (Doc. 108 at 95). Narcotics expert

Cardinale testified that "[N]orco is an opioid, same as fentanyl." (*Id.*) Pearson's claimed actual innocence also belies the sentencing Court's finding that Pearson's deletion of cell phone texts and his testimony at trial denying that he provided the white powdery substance in question that led to Carter's death was willfully and materially false. (Doc. 97 at 28). Pearson goes on to argue that absent the fentanyl causation stipulation, "there is no evidence to support a conviction in Count 1[.]" (Doc. 154 at 4). But he does not explain with facts how or why this is so. (*Id.*). The record does not aid him in this regard, for the reasons stated. For all these reasons, competent counsel reasonably could forego an actual innocence defense including under *Burrage* in favor of a seemingly stronger defense, as counsel did here by arguing that Pearson did not provide fentanyl to the victims.

### C.    IAC – Failure to Challenge the Indictment and/or seek Acquittal

Pearson alleges counsel was deficient by failing to mount a pretrial challenge to the indictment and/or motion during trial for judgment of acquittal, on grounds the death of Carter did not result from the use of fentanyl. (*See* Doc. 156 at 2 citing Federal Rules of Criminal Procedure 12(b)(3), 29). However, these allegations fail for the reasons already stated.

### D.    Evidentiary Hearing

Petitioner requests an evidentiary hearing in order "to have Ms. O'Neil explain why she did not present the [Burrage] defense in this case[,]" (Doc. 148 at 4) and to "better prove he deserves relief in this habeas action[,]" (Doc. 148 at 5).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, [u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255); *see also United States v. Jaramillo*, 2025 WL 2462728, at *20 (E.D. Cal. 2025) (same). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *Rodriguez*, 49 F.4th at 1213 (same). "To earn the right to a hearing," the movant must "allege specific facts which, if true, would entitle him to relief." *McMullen*, 98 F.3d at 1159. "The Ninth Circuit's rule is that merely conclusory statements in a § 2255 motion are not enough to require a hearing." *United States v.*

*Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

Filing a § 2255 motion does not automatically entitle a movant to a hearing if the issues can be conclusively decided based on the evidence in the motion, files, and records. *Blackledge v. Allison,* 431 U.S. 63, 80-82 (1977); 28 U.S.C. § 2255(b); *see also United States v. Mejia–Mesa,* 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"); Rules Governing § 2255 Proceedings (Habeas Rule) 8(a) (the court must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Habeas Rule 7 to determine whether an evidentiary hearing is warranted); *Fontaine v. United States,* 411 U.S. 213, 215 (1973) (§ 2255 hearing required unless motion, files, and records conclusively show movant is not entitled to relief). The district court exercises its discretion and common sense in determining whether a hearing is necessary. *U.S. v. Tate*, 523 F. Supp. 2d 165, 169 (D. Conn. 2007); *see also U.S. v. Martinez*, 475 F. Supp. 2d 154, 161 (D. Conn. 2007) (a district court is permitted to dispose of a motion to vacate without hearing where the case records demonstrate the movant's claims lack merit).

Here, the Court finds on the undisputed factual record that Pearson is not entitled to a § 2255 hearing because his claim of ineffective assistance of counsel is not cognizable. *United States v. Peterson*, 2025 WL 2780042, at *13 (E.D. Cal. Sept. 30, 2025) (movant is not entitled to a § 2255 hearing because his claims are not a basis for relief). The amended § 2255 motion as clarified may be denied as a matter of law, without a hearing. *See Leonti*, 326 F.3d at 1116 (defendant filing a motion to vacate is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief); *U.S. v. Rodriguez-Vega*, 797 F.3d 781, 791 (9th Cir. 2015) ("An oral hearing is not necessary in all cases."); *cf. United States v. Werle*, 35 F.4th 1195, 1202-06 (9th Cir. 2022) (evidentiary hearing necessary on § 2255 motion to determine factual questions underlying prejudice to overcome procedural default); *Iaea v. Sunn*, 800 F.2d 861, 865-66 (9th Cir. 1986) (remanding "for an evidentiary hearing to determine whether there is a reasonable probability Iaea would not have pled guilty absent counsel's erroneous advice"). Pearson's "mere conclusory allegations do not warrant an evidentiary hearing." *See Shah*, 878 F.2d

at 1161.

###### E.    Certificate of Appealability

Pursuant to Habeas Rule 11, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." A court may issue a certificate of appealability where the moving party has made a substantial showing of the denial of a constitutional right, and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Here, the Court finds that Pearson has not made a substantial showing of the denial of a constitutional right, for the reasons stated. Furthermore, based on the foregoing, Pearson cannot show that jurists of reason would find it debatable whether the amended § 2255 motion as clarified states a valid claim of the denial of a constitutional right. See *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) ("Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

## V.    CONCLUSION

The Court observes that a pro se litigant's "pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys." *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, a "liberal construction" does not permit the Court to ignore "an obvious failure to allege facts that set forth a cognizable claim." *United States v. Caputo*, 2023 WL 5207318, at *3 (*citing James*, 24 F.3d at 26). "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *Id.* As discussed above, Pearson fails to state a claim for relief under 28 U.S.C. § 2255 on the asserted grounds of ineffective assistance of counsel. He is not entitled to an oral hearing on the instant motion. He is not entitled to a certificate of appealability. Thus, the Court **ORDERS**:

1.    The amended § 2255 motion as clarified (Docs. 148, 156) is **DENIED**.

2.    A certificate of appealability **SHALL NOT** issue.

3.    The motion for expedited ruling (Doc. 155) is **DENIED AS MOOT**.

4.    The Clerk of the Court is directed to enter judgment in favor of the government and to close the case.

IT IS SO ORDERED.

Dated:    **June 18, 2026**

UNITED STATES DISTRICT JUDGE